STATE, Respondent, v. STEENSLAND, Appellant.

(229 N. W. 395.)

(File No. 6946. Opinion filed February 28, 1930.)

*Claude A. Bennett* and *H. B. Rudolph,* both of Canton, for Appellant.

*M. Q. Sharpe,* of Kennebec, and *Frank W. Mitchell,* of Mitchell, for the State.

BROWN, P. J. Defendant was convicted of driving an automobile while intoxicated, on July 29, 1928, and, from a judgment and order denying a new trial, he appeals. Defendant's brother Rudolph was with him, and the evidence showed that during part of the trip Rudolph drove and during part defendant drove. They collided with a car occupied by two brothers named Hild who resided at Des Moines, Iowa. Rudolph was likewise prosecuted for driving while intoxicated on that occasion and his case was first tried. The Hilds came from Des Moines and testified for the state in the case against Rudolph. Defendant in the instant case, not desiring to go to trial at that term, stipulated that the testimony of the Hilds given in the case against Rudolph might be used on the trial against him at the succeeding term of court.

■ On the trial of the case against defendant he objected to the reading of the testimony of one of the Hilds for the reason that his name had not been indorsed upon the information. This objection was properly overruled. The object of indorsing the names of the state's witnesses upon the information is to apprise defendant of the witnesses whose testimony he may have to meet. By the stipulation defendant had entered into he not only knew that he might expect to meet the testimony of the Hilds, but he also knew to the last word what that testimony would be. Failure to indorse the names of the Hilds or either of them on the information could therefore by no possibility prejudice defendant.

■ The state's attorney read the testimony of the Hilds given on direct examination, whereupon defendant's attorney read only such part of the cross-examination as he deemed desirable. The state's attorney then offered to read the remainder of the cross-examination to which defendant objected on the ground that the state had no right to cross-examine its own witness. This objection was properly overruled. The state's attorney was not cross-examining his own witness when he read *defendant's* cross-examination of the witness.

 Appellant assigns error upon the court's definition of reasonable doubt, but does not point out wherein he claims the definition to be inaccurate and does not argue the assignment. It is therefore waived.

 Appellant complains that the court did not define what was an intoxicated condition and says the jury should have been carefully instructed as to what is meant by being in an intoxicated condition. Defendant asked for no instruction on this point, and himself submitted no definition of an intoxicated condition, and, in the absence of any such request there was no more reason for the court to define what is an intoxicated condition than to define what is driving a car or operating a motor vehicle.

 There was evidence of the finding of a number of empty bottles in the car defendant was driving, also one bottle that had had alcohol in it, and that defendant and Rudolph after the collision were both seen taking a drink out of a bottle. The court charged the jury in the language of the statute (Laws 1927, c. 165) that the having on or about his person, or in or about a vehicle which one is operating, any intoxicating liquor, is prima facie evidence of the violation of the law against operating a motor vehicle while intoxicated. Appellant complains that the court failed to warn the jury that the finding of empty bottles in the car was not in itself evidence of a violation of the law against operating a motor vehicle while intoxicated. But here again it is sufficient to say that appellant asked for no such instruction, and, in the absence of any request for a more specific instruction upon the point, the one given by the court, which made the having of *intoxicating liquor* necessary to constitute prima facie evidence of a violation of the law, was sufficient.

It is finally contended that the court erred in denying a new trial on the ground of misconduct of the jury after the case was submitted to them. Affidavits were submitted on behalf of appellant, to the effect that three members of the jury were separately brought to the sheriff's office and permitted to telephone to their respective homes; that prior to this it was rumored that the jury stood ten to two for conviction, and after these jurors had been to the sheriff's office the bailiff immediately informed the sheriff that the jury now stood eleven to one for conviction. It appears from the affidavits of these several jurors that each separately desired the

bailiff to take him to the phone so that the juror could inform. his family that he could not be home that night, and that this was done, and, the most convenient phone being in the sheriff's office, the jurors were severally taken there by the bailiff; that nothing was said about the case by any of the jurors or any one else either to any one present, or in the use of the phone.

The oath administered to the bailiffs in charge of the jury required them "not to permit any person to speak to or communicate with them nor do so themselves, unless it be by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed, or when ordered by the court." This oath is ordinarily administered in open court so that the jurors hear it, and both jurors and bailiff should know that it is entirely improper for jurors, after a case is submitted to them, to communicate with any one unless by leave of the court. If any necessity arises for jurors to communicate with any one at their home, the consent or order of the court should first be obtained. But it is not every impropriety on the part of jurors or the bailiff having them in charge that will warrant the granting of a new trial. In State v. Quiram, 52 S. D. 615, 219 N. W. 830, we held that the misconduct of the jury in joking with the sheriff during mealtime, and in one of their number inquiring of the bailiff as to whether their verdict must be unanimous, to which he nodded "yes," while highly censurable, was not ground for setting aside the verdict, in the absence of a showing of prejudice to defendant. In Bryan v. State, 63 Tex. Cr. App. 200, 139 S. W. 981, it is held that the fact that a juror informed his family by phone that he was on the jury was not ground for a new trial, where it was shown that no talk was had about the case. See, also, Johnson v. State, 106 Tex. Cr. R. 124, 290 S. W. 539; People v. Piazza, 84 Cal. App. 58, 257 P. 592; 17 C. J. 355. There was no such opportunity for improper influence being brought to bear upon the jurors in the present case, by merely informing their families by phone that, on account of being on the jury, they would be unable to go home, as was presented in the case of State v. Hanks (S. D.) 224 N. W. 946; State v. Smith (S. D.) 228 N. W. 240; State v. Osler (S. D.) 228 N. W. 251. While the conduct of the members of the jury in communicating by phone with persons at their homes, without first having obtained permission of the court,

was improper, and that of the officers in permitting such communication is censurable, yet we do not think, in this case, that defendant was prejudiced thereby.

■ Appellant contends that the counter affidavits of the jurors and others should not have been received on the motion for a new trial, because they were not served upon his attorney within ten days after appellant's affidavits were served, but were first served on appellant's attorney at the time of the hearing of the motion for a new trial. "The time for service of the counter affidavits is not jurisdictional and it is within the discretion of the trial court to permit such service after the expiration of the ten days provided by statute where no inconvenience or prejudice would be occasioned thereby to the moving party." Daudel v. Wolf, 30 S. D. 409, 138 N. W. 814. It is not claimed that appellant was either inconvenienced or prejudiced on account of the time at which the counter affidavits were served. Appellant asked for no opportunity to serve rebuttal affidavits and does not claim that he desired to offer any further evidence by way of affidavit or otherwise on the motion for a new trial. The judgment and order appealed from are affirmed.

POLLEY, SHERWOOD, CAMPBELL, and BURCH, JJ., concur.